**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA**<br><br>**v.**<br><br>**STEVEN A. PRICE, et al.,**<br><br>**Defendants.** | ) | **Case No. 23-cr-122 (APM)** |

**<u>ORDER</u>**

Before the court are Defendant Keidi C. Moore's Motions for Acquittal and New Trial, ECF Nos. 198 and 199 [hereinafter Def.'s Mot.]. On September 9, 2026, the court entered an order denying a similar motion filed by her co-defendant, Steven A. Price. Order, ECF No. 223 [hereinafter Price Order]. The court incorporates in full its reasons for denying Dr. Price's motion for acquittal and addresses here only those arguments uniquely made by Ms. Moore. The court also does not repeat the governing standards that are set forth in the Price Order.

*Rule 29*. Ms. Moore first argues that there was not sufficient evidence "for a rational juror to find beyond a reasonable doubt that [she] was responsible for making the entries on the dates in the indictment for which she was convicted." Def.'s Mot. at 5. Ms. Moore points out that the evidence showed that her credentials remained open, sometimes for days at a time, on various terminals, and that other providers were available on the dates in question to perform the disputed procedures, *id.*, and there was no evidence that she submitted any Medicaid claim, *id.* at 6. But these contentions do not negate evidence showing that, on the dates at issue, Ms. Moore entered the disputed procedure codes. A reasonable juror could have determined that Ms. Moore entered the codes on the relevant dates, even though terminals remained open with her credentials and other providers were present. Also, it is not material that Ms. Moore herself did not submit

claims to Medicaid. So long as she acted knowing that someone else would submit the false claims—and a reasonable juror could have so concluded—that is sufficient to sustain her conviction.

Ms. Moore further contends that "there was insufficient evidence for a rational juror to have found beyond a reasonable doubt that [she] intended to defraud Medicaid." *Id.* at 6. Ms. Moore asserts that there was no evidence that she received payments outside her salary, *id.* at 7–8; that she had "any knowledge or training in dental codes outside of hygiene codes," *id.* at 8; that she had "knowledge of the rules and regulations of Medicaid or the information provided on codes submitted to Medicaid or the submission of claims for payment to Medicaid," *id.* at 9; or that she knew the precise code definition for a clinical crown lengthening (CCL) procedure, *id.* at 10. Ms. Moore also argues that her deletion of codes negated her intent. *See id.* at 11. But a reasonable juror could have inferred the requisite knowledge from her years of working with Dr. Price and the sheer volume of the fraud. Nor was the government required to prove that Ms. Moore had a profit motive. A reasonable juror also could have viewed Ms. Moore's deletions as inculpatory. They supplied proof of Ms. Moore's knowing participation in the scheme and her effort to cover it up. The jury did not have to credit her assertions that the deletions demonstrated her lack of intent and the absence of a conspiracy.

Ms. Moore next contends that there was "insufficient evidence in the record for a rational juror to conclude—for entries made or presumably made by Ms. Moore—no services were provided to support the entries." *Id.* at 14. A reasonable juror, however, could have inferred that the procedures were not performed based on a raft of evidence, including the volume of codes submitted to Medicaid; the repeated performance of a procedure on the same tooth; the lack of pediatric patients at The Smile Center (the patient population for the fixed unilateral space

maintainer procedure); and the consistent testimonies of patient witnesses who did not recall receiving the services at issue.

Finally, Ms. Moore reiterates many of the same arguments to insist that there was insufficient evidence of a conspiracy, *id.* at 15–18, or an intent to defraud as to the space maintainer procedures, *id.* at 18–19. The court rejects those contentions for the reasons already discussed.

*Rule 33.* Ms. Moore also moves for a new trial on various grounds. The first is the government's purported ignorance of the Open Dental software. *Id.* at 20–28. This manifested itself in multiple ways: late-discovery of her deletions; creation of mid-trial summary exhibits; overnight tutorials to establish the authenticity of her exhibits; and the misleading display of the calendar views in Open Dental to suggest that providers other than Ms. Moore were not present on the days in question to perform services. *Id.* Even accepting Ms. Moore's contention that the government lacked expertise in Open Dental, she nowhere explains how this amounted to a serious miscarriage of justice that warrants a new trial. After all, Ms. Moore used Open Dental throughout trial to great effect to undermine the prosecution's case. She did so through cross-examining government witnesses, presenting her own exhibits, and sponsoring the expert testimony of Kristal Rodiguez. If anything, the government's inferior knowledge of Open Dental presented Ms. Moore with opportunities to present her defense, of which she took full advantage.

Ms. Moore further contends that she was denied a fair trial, and thus entitled to a new one, due to "the Court's ruling excluding cross examination of Agent Agee on his failure to interview [her] about the deletions" after the government seized The Smile Center's Open Dental records. *Id.* at 20–22. But the court did not hastily preclude that area of examination. It did so only after balancing various factors, including its probative value, the speculation that Ms. Moore would have spoken to law enforcement if approached for an interview, and the availability of other

avenues of questioning to establish the government's lack of investigation and unfamiliarity with Open Dental. Trial Tr., 1/28/2026, at 458:7–460:24. Ms. Moore further has not shown how, notwithstanding her vigorous cross-examinations and defense presentation highlighting various investigative shortcomings, she was prejudiced by the court's ruling.

Finally, Ms. Moore renews her assertion that the court should have granted her a separate trial. *Id.* at 28–30. But the government's case was not so heavily focused on Dr. Price to cause Ms. Moore substantial prejudice from a joint trial. A severance was not warranted.

For the foregoing reasons, Ms. Moore's Motions for Judgment of Acquittal and New Trial, ECF Nos. 198 and 199, are denied.

Dated: October 28, 2026

Amit P. Mehta
United States District Judge